## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * * *
*                 *

**LEE HUTCHINS, SR.**           *

       Plaintiff,         *       **CIVIL ACTION NO.  16-cv-30008**

    **v.**                *

**DANIEL J. MCKAY, FELIX M.**   *
**ROMERO, THOMAS HERVIEUX, and**   *
**THE CITY OF SPRINGFIELD**    *

      Defendants       *

* * * * * * * * * * * * * * * *

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE

Bifurcating claims against a police officer and his employer is an unnecessary response to a familiar issue ordinarily addressed by jury instructions.  It also runs the risk of under-compensating plaintiffs for their injuries and letting municipalities operate unconstitutional disciplinary systems with impunity.

When a police officer uses excessive force on a citizen like Lee Hutchins, the citizen suffers physically and emotionally.  Our civil justice system permits the citizen to seek redress in the form of monetary damages.  If jurors decide an officer violated the citizen's right to be free from such force, they must then select a figure that fairly compensates the injured party.  Figuring out how much physical pain and emotional distress is "worth" is anything but an exact science.  *See Bielunas v. F/V Misty Dawn,*

1

*Inc.*, 621 F.3d 72, 80 (1st Cir.2010). ("There is no mathematical formula for determining the monetary equivalent of non-economic injuries." (citation omitted)).

Over the course of a trial, jurors may decide that while an officer's liability is clear, fully compensating a plaintiff for his or her suffering would result in a financial hardship to the family of the offending officer.  Having reached this conclusion, jurors may decline to award damages commensurate with the harm endured.

If such jurors were to learn that a municipality's deliberate indifference to the plaintiff's rights was a moving force that proximately caused the individual officer to violate those rights, chances are they would be much less reluctant to award a total sum that actually makes the plaintiff whole.  This, of course, is what a prevailing plaintiff is legally entitled to receive.

Once a jury settles on a number in bifurcated case against an officer, proof of a *Monell* violation at a second trial will not result in a second number to be added to the first.  *See Wilson v. Town of Mendon*, 294 F.3d 1, 7 (2002).  Unless the first number exceeds the limit of the officer's indemnification, the expensive and time-consuming undertaking of establishing municipal liability offers little beyond the satisfaction of shining a light on the underlying problem.  Though the impulse to perform this public service may be strong – particularly when the Justice Department no longer perceives any reason to scrutinize the performance of local police departments[1] – actually embarking on such a quest is impractical, if not irrational.  Indeed, only a zealot – or an individual completely insulated from financial concerns – would conclude the risks of a second trial

---

[1] *See* Eric Lichtblau, "Sessions Indicates Justice Department Will Stop Monitoring Troubled Police Agencies" N.Y. TIMES (Feb. 28, 2017), *available at* https://www.nytimes.com/2017/02/28/us/politics/jeff-sessions-crime.html?_r=0 (last visited Apr. 10, 2017).

pale in comparison to the prospect of its (non-monetary) rewards.  Unless a plaintiff *and* his or her attorney possess such zeal, the city is off the hook and can continue turning a blind eye toward rogue officers.

The defense solution to the problem of under-compensating plaintiffs is a jury instruction.  When judges tell jurors how to calculate damages, they stress the importance of dispassion.  This is sufficient, civil defendants argue, to keep any sympathy jurors might have for underpaid public servants from affecting their deliberations.  For the law presumes jurors follow the court's instructions.  *See Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F. 3d 47, 53 (1st Cir. 1998).

This presumption – that jurors follow judicial directions – is a familiar precept to many plaintiffs.  During the state court criminal trials that almost always precede civil litigation, prosecutors frequently seek to admit evidence of prior bad acts allegedly perpetrated by the defendant and/or defense witnesses.  When the future plaintiff raises the danger that fact finders will use this propensity evidence inappropriately, trial courts often resolve the issue by admitting the evidence and giving a limiting instruction.  *See, e.g.*, *Commonwealth v. Butler*, 445 Mass. 568, 576 (2005) (affirming assault and battery conviction where "the jury's consideration of the [prior bad act] evidence" was "confined by repeated limiting instructions").

Years later, when discovery reveals an arresting officer's proclivity for excessive force, such evidence properly becomes the cornerstone of a civil case against the officer's employer for ignoring the ticking time bomb that, the plaintiff alleges, detonated on the night in question.  At this point, the officer and his employer inevitably seek bifurcation on the ground that officer's history of bad behavior will confuse jurors and/or cause them

to perceive the past as prologue.  When the plaintiff suggests jurors be told that such evidence cannot be considered proof the defendant officer used excessive force against the plaintiff, civil defendants scoff at the efficacy of limiting instructions.  Only separate trials, they proclaim, can produce just verdicts.

Having municipalities stand trial alongside the officers they employ is commonplace in many jurisdictions.  When and where this happens, the defendants almost always present a united front.  Municipalities recognize that unless plaintiffs establish an underlying constitutional deprivation by an individual defendant, there is no case for municipality liability.  They therefore join the chorus in declaring the officers did nothing wrong.  Rarely do cities focus exclusively on the propriety of their customs and policies and leave individual defendants to fend for themselves.

Mr. Hutchins is aware this Court typically bifurcates claims upon request and did do so when the municipal defendant in this case made such a request earlier this year. Should the Court adhere to its standard practice in this case, no appellate court would ever find fault, as such decisions are among those entrusted to the sound discretion of trial judges. *Lund v. Henderson*, 807 F.3d 6, 12 (1st Cir. 2015).  In asking the Court to reconsider its usual approach, the plaintiff must confess this is not an unusual case.  Mr. Hutchins, like many plaintiffs in his position, believes he was abused by police officers he encountered on the night of his arrest, as well as policy-makers whose deliberate indifference to fundamental rights paved the way for his suffering.  The premise of his opposition to the pending motion to bifurcate is the common desire to hold all bad actors accountable.

4

Respectfully Submitted,
THE PLAINTIFF,

By ___/s/ Luke Ryan
LUKE RYAN, BBO#664999
SASSON, TURNBULL, RYAN & HOOSE
100 Main Street, Third Floor
Northampton, MA  01060
(413) 586-4800

## CERTIFICATE OF SERVICE

I, LUKE RYAN, hereby state that the foregoing was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 10, 2017.

 /s/ Luke Ryan, Esq._____
BBO#664999
Sasson, Turnbull, Ryan & Hoose
100 Main Street, 3rd floor
Northampton, MA  01060
(413) 586-4800
Fax:  (413) 582-6419