## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**LEE HUTCHINS, SR.**

       Plaintiff,

      **v.**

**DANIEL J. MCKAY, FELIX M. ROMERO, THOMAS HERVIEUX, and THE CITY OF SPRINGFIELD**

      Defendants

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**NO.  16-cv-30008-NMG**

### PLAINTIFF'S MOTION IN *LIMINE* TO ADMIT EVIDENCE

On January 10, 2019, the parties filed a joint motion waiving oral argument on three defense motions in *limine* and requesting rulings in advance of an upcoming deposition to preserve the testimony of an unavailable witness. (Dkt. No. 116, Joint Mot. for Miscellaneous Relief.) That same day, Plaintiff filed a list of 122 exhibits he wished to have admitted at trial. (Dkt. No. 118, Pl.'s Ex. List.) Four days later, Defendants lodged objections to all but 33. (*See* Dkt. No. 122, Defs.' Objections to Pl.'s Exs.) In their "Brief Statement[s] as to grounds for objection[s]," Defendants repeatedly challenged the relevance of Plaintiff's proposed exhibits and sought the exclusion of 26 particular items based solely on arguments set forth in their then-pending motions in *limine*.

At the outset of the hearing on Friday, January 18, 2019, the Court issued rulings on these in *limine* motions. In denying Defendants' motion to exclude the prior conduct histories of two Defendant officers, the Court adopted Plaintiff's argument that Defendants were attempting to

1

take a second bite at the summary judgment apple. Notwithstanding their prior request for the

Court to make in *limine* rulings based on the papers, defense counsel proceeded to lodge a

lengthy oral objection that amounted to a third bite at the summary judgment apple. Dissatisfied

with the Court's response, defense counsel announced their intention to seek reconsideration of

the two unfavorable rulings at some point before a trial scheduled to begin the next business day.

Rather than address Defendants' remaining objections to Plaintiff's exhibits, the Court

ordered the parties to confer and attempt in good faith to resolve or narrow the issues. In doing

so, the Court warned the parties that if forced to devote time to ruling on challenges to exhibits,

the Court would penalize the losing party by deducting said time from the ten hours allotted to

that party.

After conferring with defense counsel in person, undersigned counsel substantially

reduced Plaintiff's proposed exhibits and sent defense counsel a revised list with an explanation

as to the legal basis for each remaining item's admission. Defendants' response (reproduced in

the far-right column of the tables below) does not constitute a good faith effort to narrow the

issues. Dozens of Defendants' relevance challenges are borderline frivolous and dozens of the

objections to the conduct histories of the Defendant officers have already been considered and

rejected by two judges of this Court. For these and those reasons set forth below, Plaintiff

respectfully requests that this Honorable Court admit the following exhibits over Defendants'

objection.

A.     Selected Plaintiff Medical Records – Pre-Incident

| No. | Pages | Date(s) | Author/Source | Description | Defendants' Objections |
|-----|-------|---------|---------------|-------------|------------------------|
| 1 | 1 | 6.28.04 | Baystate Medical Center | ER Records | Defs. voice the same objection previously asserted through counsel regarding the relevancy |

| | | | | | and probative value of medical records concerning Sr. prior to the 2013 incident. Further, Defs. assert Plaintiff has failed to present expert testimony that the injuries complained of in any of Plaintiff's medical records are casually connected to the incident that is the subject matter of this lawsuit. |
|---|---|---|---|---|---|
| 5 | 1 | 9.20.05 | Pioneer Spine & Sports Physicians, P.C. | Progress Note | Same as above |
| 7 | 1 | 10.13.05 | Mercy Medical Center | Procedure Note | Same as above |
| 10 | 2 | 11.20.06 | Pain Management Services | Treatment Note | Same as above |
| 17 | 3 | 1.15.13 | Baystate High Street Health Center Adult Medicine | Neurological Data & Patient Education/Instruction | Same as above. |

These records indicate that after falling through a porch in 2004, Plaintiff suffered a back injury that doctors attempted to treat with facet joint injections before a discogram revealed L5-S1 disc generated pain. Two years later, Plaintiff began experiencing "his highest pain levels with prolonged sitting and standing." On such occasions, pain would "radiate from his low back into his right lower extremity" and produce feelings of "burning, and numbness and tingling into his right leg." A treatment note from January 15, 2013, indicates this pain persisted. Five days before the incident giving rise to this lawsuit, Plaintiff reported low back pain of 6 on a scale of 1-10. His medical records for that day also memorialize prescriptions for a number of medications, including a skeletal muscle relaxant for back spasms and insulin for his type 2 diabetes.

This documentation is relevant with respect to both liability and damages.

At trial, it is anticipated that Defendant Daniel McKay will accuse Plaintiff of overpowering him by wresting away his baton. Defendant Thomas Hervieux will testify that when he arrived at the scene Plaintiff was using that baton to reign blows down upon the heads of McKay and/or Defendant Felix Romero. According to Hervieux, Plaintiff then attempted to evade apprehension by walking "briskly" back towards his porch.

Plaintiff not only denies these allegations. He and several of his witnesses will testify that he was physically incapable of engaging in such activity. Exhibits documenting his pre-existing medical condition may not "resolve [this] key issue in the case," but they plainly "move the inquiry forward to some degree." *United States v. Liriano*, 761 F.3d 131, 140 (1st Cir. 2014) (quotation marks and citation omitted). No more is required under Rule 401.

As for the issue of damages, it is undisputed that Hervieux used his baton to strike Plaintiff and knock him to the ground. If jurors find this use of force was unjustified, they will have to decide on an award to compensate Plaintiff for his pain and suffering. Excluding Plaintiff's proposed exhibits would, in effect, "immunize the exacerbation of a pre-existing condition, leaving the weakest and most vulnerable members of society with the least protection from police misconduct." *Figueroa-Torres v. Toledo-Davila*, 232 F.3d 270, 276 (1st Cir. 2000) (citation omitted). "The bottom line is this. The relevancy requirement is not very hard to meet . . . . And it is met here." *United States v. Rodríguez-Soler*, 773 F.3d 289, 294 (1st Cir. 2014) (internal citation omitted).

Turning to Defendants' "probative value" argument, the danger of juror confusion is practically non-existent. To give factfinders a taste of his pre-existing disability, Plaintiff seeks to introduce a grand total of eight pages of medical records clearly marked with dates prior to

January 20, 2013. No juror contemplating this evidence will consider the possibility that the City

or Defendant officers are responsible for an injury that occurred eight years before the parties'

fateful encounter.

B.      Selected Plaintiff Medical Records – Post-Incident/Pre-Criminal Trial

| No. | Pages | Date(s) | Author/Source | Description | Defendants' Objections |
|-----|-------|---------|---------------|-------------|------------------------|
| 18 | 2 | 1.28.13 | Baystate High Street Health Center Adult Medicine | Ambulatory Intake History | Defs. voice the same objection previously asserted through counsel regarding the relevancy and probative value of medical records concerning Sr. after the 2013 incident. |
| 19 | 1 | 5.28.13 | Baystate High Street Health Center Adult Medicine | Ambulatory Intake History | Same as above |
| 20 | 1 | 2.9.14 | Baystate High Street Health Center Adult Medicine | Ambulatory Intake History | Same as above |
| 21 | 1 | 3.5.14 | Baystate High Street Health Center Adult Medicine | General Medicine Office Note | Same as above |
| 22 | 1 | 7.10.14 | Baystate High Street Health Center Adult Medicine | General Medicine Office Note | Same as above |
| 23 | 1 | 8.19.14 | Baystate High Street Health Center Adult Medicine | General Medicine Office Note | Same as above |

If the jury finds the Defendant officers commenced a prosecution of Plaintiff for an

"ulterior or illegitimate purpose," the question, on the abuse of process claim, will become

whether this resulted in damage. *Gutierrez v. Massachusetts Bay Transp. Auth.*, 437 Mass. 396,

407 (2002) (citation omitted). At trial, Plaintiff will testify that the nineteen months he spent in

Springfield District Court as a criminal defendant caused him considerable emotional distress. *See Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 648 (2010) (recognizing that "parties may recover for mental suffering, distress, and . . . feelings in abuse of process claim" (quotation marks and citations omitted). Documentation from Plaintiff's primary care provider corroborate this contention.

Eight days after his arrest, Plaintiff characterized the altercation with the Defendant officers as a source of "significant grief/stress." A year later, Plaintiff reported feeling "down/hopeless/depressed . . . nearly every day." On March 5, 2014, Plaintiff said he experienced "[f]requent anxiety" due, in part, to an "[u]pcoming court case." On July 10, 2014, he continued to experience a "high level of emmotional/social stress." Finally, records from August 19, 2014, i.e., three weeks before the start of his criminal trial, contain these notations:

- Alot of social/family stressors right now, feels overwhelmed all the time

- Poor concentration and sleep

- Lately has not felt like checking sugar, taking, meds, "doing anything"[1]

Once again, "[t]his evidence easily satisfies the low bar of relevancy set out in Rule 401." *United States v. Breton*, 740 F.3d 1, 14 (2014). Excluding these exhibits would deprive Plaintiff of critical documentary proof memorializing his mental anguish during a critical juncture in this ordeal.

C.    Selected Plaintiff Medical Records – Post-Criminal Trial

| No. | Pages | Date(s) | Author/Source | Description | Defendants Objections |
|-----|-------|---------|---------------|-------------|----------------------|
| 24 | 1 | 10.2.14 | Baystate High Street Health | General Medicine | Defs. voice the same objection previously asserted regarding |

---

[1] Additional evidence of the damage done by Plaintiff's prosecution can be seen in Plaintiff's proposed Exhibit No. 24. During a medical appointment three weeks after his acquittal, Plaintiff reported feeling "more calm as of late" and referenced a "recent good outcome at court trial."

| | | | Center Adult Medicine | | the relevancy and probative value of medical records concerning Sr. after his criminal trial. |
|---|---|---|---|---|---|
| 25 | 1 | 11.13.14 | Baystate High Street Health Center Adult Medicine | General Medicine | Same as above. Further, Defs. seek the redaction of statements under the heading "Pain in Shoulders." Specifically, Defs. seek to redact "patient was forcefully tackled to the ground and reported struck with polic [sic] officers baton" |
| 27 | 2 | 8.20.15 | Baystate Medical Center | General Medicine | Same objection as asserted for Exh. 24 |
| 31 | 1 | 4.15.16 | Baystate Medical Center | General Medicine | Same objection as asserted for Exh. 24 |
| * | 1 | 10.9.17 | Baystate Medical Center | General Medicine[2] | Same objection as asserted for Exh. 24 |
| ** | 1 | 1.19.18 | Baystate High Street Health Center Adult Medicine | General Medicine | Same objection as asserted for Exh. 24 |

In their original objections to Plaintiff's Exhibits, Defendants took the position that: "All medicals are unrelated to any injury incurred in the within action . . . ." (Dkt. No. 122, Defs.' Objections to Pl.'s Exs. at 1.) This supposedly missing nexus is clearly present in a medical record dated November 13, 2014, which contains the following notations:

**Pain In Shoulders**
C/o pain and decreased movement in both shoulders, since trauma which occured last year (patient was arrested at time of domestic altercation which was occuring outdoors in front of the patients house, involving patients son. patient was forcefully tackled to the ground and reported struck with polic officers baton) Has not been using any medication or other therapy for the pain.
Also c/o numbness and weakness in the hands and fingers since this incident.

---

[2] This document and the one that follows were among the medical records we received on January 9, 2019 and disclosed the following day.

A notation from nine months later memorializes a similar report: "Was hit in arms by police in 2013, since then he reports pain, lack of strength in his arms." As do notations from 2017 –

> 1. Pain in both arms
> Chronic problem. Began after physical altercation where patient was reportedly roughed up by police during an arrest
> Pain in both triceps. Associated with any movement
> Very tender to touch
> Has tried nsaid, muscle relaxants, PT, without help

and 2018 – "52 yo M here for trigger pont injections. Has had previous, good temporary relief, most recently 11/2017. B/1 tricept pain stems from police assualt a number of years ago."

These statements were plainly "made for — and [were] reasonably pertinent to — medical diagnosis or treatment" and "describe medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4).[3] While Plaintiff could have called the doctor who administered trigger point injections to testify that this treatment was offered in response to an injury Plaintiff suffered on the night in question, the admissibility of the record documenting this treatment does not hinge on the presence of the doctor who provided it. Defendants are, of course, free to point out the absence of a medical expert in this case. What they cannot do is conflate a challenge to the weight of evidence with its inadmissibility.

D.    McKay's Selected IIU Files

| No. | Pages | Date(s) | Author/Source | Description | Defendants' Objections |
|---|---|---|---|---|---|
| 35 | 37 | 2.18.10 | Sgt. Stephen Wyszynski | Ex. 49C – SO#09-243S | Defs. voice the same previously objections asserted in the Motion in Limine filed regarding the IIU Files, oral argument, previous discussions with |

---

[3] Plaintiff does not object to redacting portions of his medical records that allege officers "roughed" him up or characterize the incident as an "assault." *See Bucci v. Essex Ins. Co.*, 393 F.3d 285, 298 (1st Cir. 2005). Defendants' proposed redactions are unwarranted – particularly since it is undisputed that he was struck with a police officer's baton.

| | | | | | counsel and the Motion to Revise the Court's Order re: the Motion in Limine to Exclude the IIU Files. |
|---|---|---|---|---|---|
| 36 | 14 | 9.3.10 | Sgt. Richard Pelchar | Ex.49D – SO#10-150De | Same as above |
| 37 | 9 | 9.16.10 | Capt. Eugene Dexheimer | Ex. 49A | Same as above |
| 38 | 10 | 12.27.11 | Sgt. Stephen Wyszynski | Ex. 49C – SO#11-148Anonymous | Same as above |
| 39 | 21 | 11.8.12 | Sgt. Stephen Wyszynski | Ex. 49D – SO#12-103M | Same as above |
| *** | 1 | 7.18.16 | City of Springfield | IIU Report by Police Officer | Same as above |

In the objections they furnished to undersigned counsel, Defendants cited a "Motion to Revise the Court's Order re: the Motion in Limine to Exclude the IIU Files." Responding to an un-filed pleading poses something of a challenge. However, it is difficult to see what more on this topic can be said. The City of Springfield clearly does not want to defend a disciplinary system that failed to address the risks posed by officers who, the undisputed evidence will show, pepper-sprayed a disabled grandfather then knocked him over with a baton as he stood on the sidewalk to his front porch. Alas, the depth of a litigant's displeasure with a judicial ruling is not a recognized ground for reconsideration.

E.    Romero's Selected IIU Files

| No. | Pages | Date(s) | Author/Source | Description | **Defendants Objections** |
|---|---|---|---|---|---|
| 41 | 15 | 2.23.12 | Sgt. Stephen Wyszynski | Ex. 4B – SO#12-0221 | Defs. voice the same objections previously asserted in the Motion in Limine filed regarding the IIU Files, oral argument, previous discussions with counsel and the Motion to Revise the Court's Order re: the Motion in Limine to Exclude the IIU Files. |

See above.

F.   <u>Selected Portions of Hervieux's Personnel File & IIU History</u>

| No. | Pages | Date(s) | Author/Source | Description | Defendants' Objections |
|-----|-------|---------|---------------|-------------|------------------------|
| 49 | 1 | 7.9.02 | Thomas Hervieux | Letter to Chief Meara | Defs. voice the same objections previously asserted in the Motion in Limine filed regarding the IIU and Personnel Files, oral argument, previous discussions with counsel and the Motion to Revise the Court's Order re: the Motion in Limine to Exclude the IIU Files. |
| 50 | 29 | 7.12.02 | Lt. Robert Cheetham & Sgt. Norman Charest | Ex. 47B | Same as above |
| 51 | 1 | 4.22.04 | Lt. William Collins | Special to Chief Meara | Same as above |
| 52 | 2 | 3.17.05 | Paula Meara | Written Warning | Same as above |
| 53 | 11 | 11.2.07 | Sgt. James Rosso | Ex. 47A | Same as above |
| 54 | 24 | 6.13.08 | Sgt. Richard Pelchar | Ex. 47G | Same as above |
| 55 | 13 | 5.26.09 | Sgt. Richard Pelchar | Ex. 47J | Same as above |
| 59 | 2 | 2.8.10 | Thomas Hervieux | Memo to Fitchet | Same as above |
| 60 | 1 | 8.24.10 | Dep't of Army Landstuhl Regional Med. Ctr.: | Orders A-08-023835 | Same as above |
| 61 | 1 | 2.17.11 | Dep't of Army HQ, US Army Medical Fort Sam, TX | MCHR-MA Orders A-02-103453 | Same as above |
| 62 | 1 | 10.18.11 | Dep't of Army, Installation Management Command | Orders 291-1001 | Same as above |
| 63 | 1 | 10.26.11 | William Fitchet | Return to Duty – Officer Thomas Hervieux | Same as above |

| 64 | 24 | 3.2.12 | Sgt. Richard Hottin | Ex. 47K | Same as above |
| 65 | 14 | 10.1.12 | Sgt. Richard Pelcher | Ex. 47L | Same as above |
| 66 | 2 | 11.07.12 | Diane Hill, Arbella Insurance Group | Request to Respond to Hervieux claim of lost wages & Wage & Salary Verification[4] | Same as above |
| **** | 2 | 7.18.16 | City of Springfield | IIU Report by Police Officer | Same as above |

See above.

G.    SPD General Orders & CPHB Reports

| No. | Pages | Date(s) | Author/Source | Description | Defendants' Objections |
| --- | --- | --- | --- | --- | --- |
| 79 | 36 | 3.20.14 | Community Police Hearing Board | 2012-13 Annual Report | Defs. objection to portions of the CPHB recommendation that endorse the increased used cameras by the Springfield Police Department. Defs. seek redaction of such portions of the Annual review. |

An hour after furnishing this somewhat inscrutable objection to undersigned counsel, the City finally filed its proposed designations of portions of William Fitchet's testimony to be offered at trial. (*See* Dkt. No. 137.) Pages 3-4 and 12 of that pleading feature objections to testimony concerning an unheeded 2012 recommendation by the Community Police Hearing Board that the Springfield Police Department expand its use of cruiser cameras. According to the City, "While perhaps an argument could be made that such evidence would support a negligence claim, it cannot support liability under *Monell*." (*Id.* at 3.)

---

[4] Plaintiff has requested additional information about this accident and may waive his right to seek the introduction of this exhibit depending upon the information he receives.

At the heart of Plaintiff's case for municipality liability is a claim the City of Springfield ignored the misdeeds of its officers. The decision to disregard a recommendation from the civilian board tasked with reviewing excessive force complaints does not establish "deliberate indifference." But it does not have to. As the First Circuit has recognized, "a piece of evidence need not conclusively establish the existence of a fact to be considered relevant. Rather, it need only have the 'tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Rivera Calderón*, 578 F.3d 78, 97 (1st Cir. 2009) (quoting Fed. R. Evid. 401)).

H.   Court Documents

| No. | Pages | Date(s) | Author/Source | Description | Defendants' Objections |
|-----|-------|---------|---------------|-------------|------------------------|
| 80 | 8 | 4.10.17 | Springfield District Court | Official Docket for Commonwealth v. Lee Hutchins, Dkt. No. 1323CR323 | Defs. are willing to stipulate to the fact that Plaintiff was acquitted of all charges in connection to the 2013 incident that is the subject of this lawsuit. |
| 81 | 7 | 2.17.17 | USDC Mass. | Civil Docket for Case # 3:02-cv-30074-MAP | Defs. voice the same previously objections asserted in the Motion in Limine filed regarding mention of the settlement reached in the mentioned matters, oral argument, previous discussions with counsel and the Motion to Revise the Court's Order re: the Motion in Limine to Exclude previous settlements and federal lawsuits. |

With respect to Defendants' willingness to stipulate to Plaintiff's acquittal, there is no "general requirement that evidence is admissible only if directed to matters in dispute." *Old Chief v. United States*, 519 U.S. 172, 179 (1997) (quoting Advisory Committee's Notes on Fed.

Rule Evid. 401)). "While situations will arise which call for the exclusion of evidence offered to prove a point conceded by the opponent, the ruling should be made on the basis of such considerations as waste of time and undue prejudice (see Rule 403) . . . ." *Id.* Permitting Plaintiff to introduce a certified copy of the docket of his criminal case will not waste any time. In fact, it should take approximately the same amount of time as it would to read the jury Defendant's proposed stipulation.

As for their objections to the docket from the Cotto case, this represents one of the few instances where Defendants have a reasonable basis for their position. In *Kinan v. City of Brockton*, 876 F.2d 1029 (1st Cir. 1989), the First Circuit did take a dim view as to the admissibility of evidence pertaining to settlements of two excessive force suits against an officer whose misconduct served as the basis for *Monell* claim. *See id.* at 1034. However, a close reading of that case reveals that the reason this evidence was excluded stemmed from the fact that the plaintiff's allegation against the previously-sued officer was not one of excessive force. *See id.* at 1035 ("We are not faced with a series of cases making similar claims and alleging similar facts as those in the case at issue. The two cases that plaintiff sought to introduce focused on the excessive use of force. They were not relevant to the issue here, the effect of an allegedly improper broadcast.").

In *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987), a municipality "argue[d] that the district court erred in admitting evidence of the City's settlement of an earlier police brutality action brought by another party." *Id.* at 1400. The Fourth Circuit disagreed. It found such evidence was "properly admitted to show, as an essential element of Spell's 'condoned custom' theory of liability, that the City was sufficiently aware of the existence of a developed practice or custom of such conduct." *Id.* In 2006, the Advisory Committee Notes to the Federal Rules of

Evidence cited *Spell* for the proposition that "Rule 408 in inapplicable when evidence of the compromise is offered to prove notice." Fed. R. Evid. 408, Advisory Committee Notes, 2006 Amendment.

It is Plaintiff's position that the decision to settle a case that had previously resulted in an internal "not sustained" finding could have, and should have, put the City on notice that its disciplinary system left a great deal to be desired. Admitting the Cotto docket is also warranted insofar as its existence impeaches the credibility of Hervieux who neglected to acknowledge the suit when asked in an interrogatory to identify prior occasions when he had been sued.

I.    Videos

| No. | Date(s) | Description | Defendants' Objections |
|-----|---------|-------------|------------------------|
| 88 | 10.9.11 | Springfield Police Brutality, Springfield's Finest | Defs. object to the admission of the video on the grounds that the video contains a watermark through the entirety of the video and the Defs. are unable to remove the music played over the voices and chatter in the background. |
| 89 | 1.20.13 | Footage of Plaintiff post-arrest | Defs. voice the same objections previously asserted in the Motion in Limine filed regarding the post arrest video, oral argument, previous discussions with counsel and the Motion to Revise the Court's Order re: the Motion in Limine to Exclude post arrest video. |

The video with the watermark and music was presented to Officer McKay when it appeared on YouTube in 2011. At no point in the internal affairs investigation of the incident captured by the video did Officer McKay or any other officer question the authenticity of reliability of the recording. Plaintiff is willing to present a silent version of the video to the jury

14

and exclude the opening frames that refer to "Springfield's Finest." However, there is no question this is highly probative evidence the jury should consider.[5]

With respect to the apparently forthcoming "Motion in Limine to Exclude post arrest video," Plaintiff would note that the visual portion of the recording begins with him lying on the ground in handcuffs. This is where he remains for over a minute until the videographer returns inside the residence (at the insistence of the police). This is significant because it contradicts Hervieux's account that as soon as Plaintiff was handcuffed, Hervieux picked him up and put him in a cruiser.

As for the audio portion of the video, multiple declarants can be heard stating: "He didn't even do nothing!" and "The officer hit him with a stick!" These statements should be admitted both as present sense impressions and excited utterances.

"The present sense impression exception . . . makes admissible 'statement[s] describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.'" *Taylor v. Erna*, No. 08–10534–DPW, 2009 WL 2146675, at *5 (D. Mass. July 14, 2009) (quoting Fed. R. Evid. 803(1)). A party seeking to introduce a statement as a present sense impression must satisfy three requirements.

> First, the declaration must be limited to describing or explaining the event in question. . . . Second, the statement must be made contemporaneously or immediately after the event described. . . . Finally, the declarant must have been describing something that she actually perceived herself, though her participation in the event is not required.

*United States v. Ferber*, 966 F. Supp. 90, 97 (D. Mass. 1997) (Young, J.) (citations omitted).

---

[5] Plaintiff would note that despite a statement in the Special Report he received stating "The video should be viewed in its entirety," Commissioner Fitchet did not view the video until his recent deposition.

If the statement in question meets this criteria, it is "not excluded by the rule against hearsay, *regardless of whether the declarant is available as a witness*." Fed. R. Evid. 803 (emphasis added).[6]

In this case, the declarations made by those at the scene were limited to describing and explaining the event in question. The witnesses explained that although Plaintiff had not done anything wrong, he was subjected to the use of excessive force and unjustly arrested.

While these descriptions of the event are plainly accusatory, indistinguishable out-of-court declarations have been admitted in this District, *see Ferber*, 966 F. Supp. at 98-99 (admitting, as a present sense impression, an email which described how the defendant had just inculpated himself during a conversation),[7] this Circuit, *see Makuc v. Am. Honda Motor Co., Inc.*, 835 F.2d 389, 391-92 (1st Cir. 1987) (admitting, as a present sense impression, testimony regarding a mechanic's assessment of damage done to a motorcycle later involved in an accident), and throughout the country, *see Jonas v. Isuzu Motors Ltd.*, 210 F. Supp. 2d 1373, 1379 (M.D. Ga. 2002) (finding a statement made by a driver allegedly taking responsibility for an accident to be "admissible under Rule 803(1)'s exception for present sense impressions because it described the circumstances of the accident in which the declarant had just been involved"); *United States v. Mejia-Valez*, 855 F. Supp. 607, 613 (E.D.N.Y. 1994) (admitting, as present sense impressions, recordings of 911 calls made contemporaneously by two eyewitnesses

---

[6] The same holds true for excited utterances.

[7] In *Taylor*, Judge Woodlock found that a statement made by a passenger in a sedan that the sedan driver had rear-ended a mini-van right before being rear-ended by a Hummer "plainly satisfied" the requirement that the statement explain or describe the event in question. 2009 WL 2146675, at *5. He ultimately found that the statement was not a present sense impression due to "inconsistent estimates of the time interval between the accident and the point at which" the statement was made. *Id.* at *6.

to a homicide, which, among other things, provided "a description of the assailant"); *Miller v. Crown Amusements, Inc.*, 821 F. Supp. 703, 705 (S.D. Ga. 1993) (admitting, as a present sense impression, a recording of 911 call made by an anonymous witness who reported that the driver of a tractor trailer truck "sideswiped" a disabled vehicle, "hit one of the young men" tending to it, and "made no attempt to stop").

The statements at issue were also made immediately after the events described. As the First Circuit has recognized, "in many, if not most, instances precise contemporaneity is not possible and hence a slight [time] lapse is allowable." *United States v. Shoup*, 476 F.3d 38, 42 (1st Cir. 2007) (quoting Fed. R. Evid. 803(1), Advisory Committees Note). Because this delay may be as long as "'a few minutes' or more," *id.* (citing *United States v. Taveras*, 380 F.3d 532, 537 (1st Cir. 2004)), the declarations in this case clearly satisfy the second prong of the test.

Finally, "[t]here is no question that the declarant[s] ha[d] firsthand knowledge of the occurrence," *United States v. McElroy*, 587 F.3d 73, 86 (1st Cir. 2009), as they are plainly commenting upon events that had just unfolded before them. In light of the foregoing, Plaintiff submits the statements captured by the audio/visual recording meet the criteria of present sense impressions and ought to be admitted pursuant to Fed. R. Evid. 803(1).

The excited utterance exception set forth in Fed. R. Evid. 803(2) is "[c]losely related" to the presence sense exception articulated in Fed. R. Evid. 803(1). *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534,569 (D. Md. 2007) (citing Advisory Committee Note, Fed. R. Evid. 803). This exception permits "the admission of a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *United States v. Taveras*, 380 F.3d 532, 537 (1st Cir. 2004) (citation omitted).

"The rationale underlying the excited utterance exception is that excitement suspends the

declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable." *Id.* (quotation marks and citation omitted). "If the statement relates to the startling event or condition, it matters not, for example, that the statement contains an opinion, provides details of the event or condition, accuses someone of committing a crime, . . . or is self serving." 30C CHARLES ALAN WRIGHT ET AL, FEDERAL PRACTICE AND PROCEDURE § 7043 (2d ed. 2013) (footnote omitted);[8] *see also United States v. Vazquez*, 857 F.2d 857, 859, 864 (1st Cir. 1988) (admitting as an excited utterance, "Now I'm going to get all the blame and you guys are going to get out").

A party seeking to introduce a statement as an excited utterance must demonstrate that "there was: 1) a startling event; 2) a statement made while the declarant was subject to the influence of that event; and 3) a relation between the statement and the event." *Ferrara v. United States*, 384 F. Supp. 2d 384, 426 (D. Mass. 2005) (citing *United States v. Bailey*, 834 F.2d 218, 228 (1st Cir. 1987)). "The permissible time lapse between the described event and the utterance varies widely in the case law—even more widely than with the present sense impression exception—from a few minutes to several hours, and will depend on specific circumstances." *Taylor*, 2009 WL 2146675, at *7 (collecting cases). In *Bailey*, the First Circuit suggested that the exception generally ought to apply if there is "[t]estimony that the declarant still appeared 'nervous' or 'distraught' and that there was a reasonable basis for continuing emotional upset." 834 F.2d at 228 (citation omitted).

Here, the police-civilian encounter on Daytona was obviously a startling event. It can

---

[8] In support of this proposition, the treatise cites the First Circuit's decision in *McLaughlin v. Vinzant*, 522 F.2d 448, 449 (1st Cir. 1975), to admit, as an excited utterance, the statement: "George shot someone or George shot somebody." *See* 30C CHARLES ALAN WRIGHT ET AL, FEDERAL PRACTICE AND PROCEDURE § 7043 n.7 (2d ed. 2013).

hardly be disputed that each declarant heard on the recording was under the influence of that event when the statements at issue were made. Indeed, there will be testimony that the statements came within minutes if not seconds after Hervieux struck Plaintiff with his baton at a time when the declarants were distraught if not hysterical. *Cf. Estate of Thompson v. Kawasaki Heavy Industries, Ltd.*, 933 F. Supp. 2d 1111, 1127-28 (N.D. Iowa 2013) (admitting statement made by eyewitness "somewhere between 45 and 90 minutes" after an accident where the evidence showed that the eyewitness remained distraught having observed "a terrible accident involving one of his best friends"). Finally, the statements in question obviously relate to the event, as they describe how actions taken by the individual Defendants – in particular, Hervieux – resulted in the defendant's arrest. In short, the statements made at the scene are quintessential excited utterances that should be admitted at trial for their truth.

J.      Photographs

| No. | Pages | Author/Source | Description | Defendants' Objections |
|---|---|---|---|---|
| 92 | 6 | SPD | Pl.'s Initial Disclosure, Ex. 23 – Booking Photos of Keith Hutchins (Jan. 20, 2013) | Defs. object to the relevancy of such a photo. Further, Defs. state that Plaintiff's argument in footnote 16 as Keith and Lee Hutchins Jr. guilty pleas are dispositive of the defense that the officers were using excessive force to effect their arrest. Additionally, Defs. state that the admission of such a photo would be unfairly prejudicial and highly inflammatory. |
| 97 | 1 | Google maps | Bowles Street – aerial | Defs. voice the same objections previously asserted in the Motion in Limine to exclude the IIU reports, oral argument, previous discussions with counsel and the Motion to Revise the Court's Order re: the Motion in Limine to Exclude the IIU reports. |
| 98 | 1 | Google maps | Church Street – aerial | Same as above |
| 99 | 1 | Google maps | E. Columbus Street – aerial | Same as above |

| 100 | 1 | Google maps | Knox Street – Aerial | Same as above |
| 101 | 1 | Google maps | Orleans Street – Aerial | Same as above |
| 102 | 1 | Google maps | Pearl Street – front | Same as above |
| 103 | 1 | Google maps | Pearl Street – Aerial | Same as above |
| 104 | 1 | Google maps | Springfield – satellite view | Same as above |
| 105 | 1 | Google maps | Stearns – Aerial | Same as above |

The first problem with Defendants' objection to the booking photograph of Keith Hutchins is their reliance on "[a] relevancy-based argument" which, as previously noted, "is usually a tough sell." *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010). Even more problematic is Defendants' inability to grasp the fact that "an assault-and-battery conviction is analytically distinct from an excessive force claim; a [suspect] can commit the former and simultaneously be the victim of [an officer's] excessive force." *Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013).

Nothing about their guilty pleas to assaulting police officers prevents Plaintiff's sons or Plaintiff himself from testifying that the officers used excessive force while taking the two young men into custody. This is significant because, as Commissioner Fitchet acknowledged during his recent deposition, a citizen is entitled to resist a lawful arrest of another if the police use excessive force. *See Commonwealth v. Miranda*, 77 Mass. App. Ct. 76, 80 (2010). The photograph from Keith Hutchins' booking supports the contention that he was the victim of excessive force and Plaintiff was therefore justified grabbing Officer McKay's baton.

With respect to the claim that the Keith Hutchins booking photograph is "unfairly prejudicial" and "highly inflammatory," Plaintiff would note there is nothing particularly gruesome about the injuries depicted (or any dispute as to who caused them). Moreover, there is

a long line of cases upholding the admission of truly grisly pictures whenever they "have

nontrivial probative value." *See United States* v. Fields, 483 F.3d 313, 355 (5th Cir. 2007).

*Conclusion*

     Interposing baseless and/or previously rejected objections to a wide swath of an

opponent's exhibits may seem like a clever trial strategy. If nothing else it creates uncertainty as

to what can be said in opening statements and forces opposing counsel to spend valuable time

doing legal research and drafting pleadings on subjects that are not seriously in dispute. For the

reasons set forth above, Plaintiff respectfully requests that this Honorable Court allow this

motion and strongly discourage Defendants from continuing to engage in the legal

gamesmanship that required its preparation.


**THE PLAINTIFF**


By:  /s/ Luke Ryan
LUKE RYAN, BBO# 664999
DAVID HOOSE, BBO# 239400
SASSON, TURNBULL, RYAN & HOOSE
100 Main Street, 3rd Floor
Northampton, MA 01060
(413) 586-4800
lryan@strhlaw.com

## CERTIFICATE OF SERVICE

I, LUKE RYAN, hereby state that the foregoing was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 20, 2019.

                         /s/ Luke Ryan, Esq.
                         BBO#664999
                         Sasson, Turnbull, Ryan & Hoose
                         100 Main Street, 3rd floor
                         Northampton, MA  01060
                         (413) 586-4800
                         lryan@strhlaw.com