## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

LEE HUTCHINS, SR.

      Plaintiff,

      v.

DANIEL J. MCKAY, FELIX M.
ROMERO, THOMAS HERVIEUX, and
THE CITY OF SPRINGFIELD

      Defendants

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

NO.  16-cv-30008-NMG

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS PETITION FOR ATTORNEY FEES AND PRE-JUDGMENT INTEREST

*Introduction*

      This is a case in which an award of the full measure of attorney fees, costs, and interest is amply warranted. Plaintiff's counsel made every effort to resolve this case early and inexpensively but were rebuffed at every turn by the defense.

      This lawsuit was filed in January of 2016. At a case management conference eleven months later, Magistrate Judge Robertson broached the possibility of court-sponsored mediation. (*See* Dkt. No. 27.) Defendants subsequently made their participation contingent upon Plaintiff reducing his demand to five figures. This was acceptable to Plaintiff, and on December 9, 2016, Attorney Luke Ryan emailed Assistant City Solicitor Lisa deSousa proposing the parties agree to mediation with Plaintiff beginning at $95,000.00 and Defendants at $45,000.00.[1]

---

[1] The complete string of emails referenced here and below are appended to this document as Exhibit A.

Four days later, Attorney deSousa responded that Defendants could not agree to an opening position of more than $10,000.00 and invited Attorney Ryan to share his ideas as to the likelihood of Plaintiff's success in establishing liability, as well as the potential value of his damages.

On December 20, 2016, Attorney Ryan responded, outlining the strengths of Plaintiff's case in a way that closely parallels the evidence the Court heard at trial. He stated that while Plaintiff was disinclined to commence mediation with the defense opening at such a low number, Mr. Hutchins would be willing to engage in the process if Defendants increased their opening position to $30,000.00. On December 30, 2016, Attorney deSousa conveyed Defendants' belief that the parties were too far apart for mediation to be beneficial.

Notwithstanding the obvious existence of disputed issues of fact, Defendants proceeded to engage in the costly and time-consuming process of seeking judgment as a matter of law. (*See* Dkt. No. 31.) Following unfavorable rulings on their motions for summary judgment and to bifurcate, *see Hutchins v. McKay*, 285 F. Supp. 3d 420 (D. Mass. 2018), the individual Defendants filed a notice of appeal (Dkt. No. 66) and the City sought a Certificate of Appealability (*see* Dkt. No. 67).[2]

In response to this latter request for relief, undersigned counsel filed a factually detailed opposition pinpointing the flaws in the City's supervision and discipline of Defendant Thomas

---

[2] In a memorandum of law filed in support of its motion for a certificate of appealability, the City acknowledged that "'the instances where Section 1292(b) may appropriately be utilized will, realistically, be few and far between' and is 'hen's teeth rare.'" (Dkt. No. 68, pg. 5 (quoting *Camacho v. Puerto Rico Port Auth.*, 369 F.3d 570, 573 (1st Cir. 2004)).)

Hervieux. (*See* Dkt. No. 77.)[3] On April 23, 2018, Judge Ponsor denied the City's request. (*See* No. 81.)

Three days later, the Honorable Patrick King (ret.) began communicating with the parties in his capacity as Settlement Counsel for the First Circuit. Given the enormous increase in time and expense Plaintiff had incurred in litigating these matters up to that date, Plaintiff's counsel entered mediation with a new demand of $150,000.00. Defendants increased their opening posture to $20,000.00. Plaintiff countered with a reduction to $125,000.00 and received no further response from Defendants. Thus, mediation failed once again.

Meanwhile, on May 25, 2018, the First Circuit issued a show cause order directing the individual officers to "demonstrate why [their] appeal should not be dismissed for lack of jurisdiction." (Dkt. No. 101.) In their response, the individual officers "fail[ed] to address the concerns highlighted in [the] show cause order," and therefore, on November 8, 2018, the First Circuit dismissed the appeal. (*Id.*) Although this detour on the road to trial did not require Plaintiff to incur any expenses beyond the time spent monitoring filings by the Court and opposing counsel, Defendants' litigation strategy caused yet another delay in the proceedings.

By this point, Judge Ponsor had decided to take inactive status and the case was reassigned to this Court. On October 26, 2018, Defendants once again sought a bifurcation order compelling Plaintiff to first present his claims against the individual officers. (*See* Dkt. No. 100.)[4] When the Court denied this motion on December 3, 2018 (*see* Dkt. No. 107), the City filed motions in *limine* seeking to preclude the introduction of any evidence in support of

---

[3] This pleading was filed under seal and therefore is not available on ECF.

[4] This request required Plaintiff's counsel to draft yet another opposition on this issue. (*See* Dkt. No. 102.)

Plaintiff's *Monell* claim. (*See* Dkt. Nos. 111-13.) At the final pretrial conference on Friday, January 18, 2019, the Court found an evidentiary basis for Plaintiff's claim against the City and characterized the attempt to bar such evidence as a "second bite at the summary judgment apple."

The Court then inquired as to the possibility of settlement, and consistent with what lawyers always say in such circumstances, both parties reported that they were open to such a discussion. The City asked Plaintiff for a new demand.

On January 19, Attorney Ryan suggested that, given the enormous amount of time and expense Plaintiff had incurred in preparing the case for trial[5] – at that point in excess of $100,000.00 – settlement discussions would not be fruitful unless Defendants started in the six-figure range. The City responded the same day through Attorney deSousa with an offer of $35,000.00[6] – less than one-seventh the sum eventually awarded by the jury, excluding, of course, attorney's fees.[7]

In short, the City never made any serious effort to resolve the litigation. Instead, it chose to mount "a Stalingrad defense, resisting [Plaintiff] at every turn and forcing [him] to win [his] hard-earned victory from rock to rock and from tree to tree." *Lipsett v. Blanco*, 975 F.2d 934, 939 (1st Cir. 1992).

---

[5] By this time in addition to normal trial preparation, Plaintiff had to expend funds for a video deposition of Commissioner Fitchet and had rented lodging in Boston for Plaintiff's legal team, as well as for Plaintiff and his witnesses.

[6] This was clearly an offer – like all offers from the City of Springfield – that was intended to include damages, as well as attorneys' fees and costs. This was not an Offer of Judgment pursuant to Fed. R. Civ. P. 68. *See Spooner v. Een, Inc*., 644 F.3d 62, 70-71 (1st Cir. 2011).

[7] Hours after making this offer, Defendants advised Plaintiff of their continued objection to 54 of the 88 exhibits Plaintiff wished to admit at trial. This required Plaintiff to draft and file a twenty-one-page motion to admit in evidence. (*See* Dkt. No. 138.)

> While this hard-nosed approach to litigation may be viewed as effective trench warfare, it must be pointed out that such tactics have a significant downside. The defendants [should] suffer the adverse effects of that downside here. There is a corollary to the duty to defend to the utmost — the duty to take care to resolve litigation on terms that are, overall, the most favorable to a lawyer's client. Although tension exists between the two duties, they apply concurrently. When attorneys blindly pursue the former, their chosen course of action may sometimes prove to be at the expense of the latter.

*Id.* at 941.

***Attorney Fees***

As the Court is well aware, after a seven-day trial, a jury found for Plaintiff on both federal and state law claims stemming from the use of excessive force by Officer Hervieux.[8] The jury also found the City of Springfield liable under a *Monell* theory for Plaintiff's injuries. Plaintiff is entitled to reasonable attorney fees as a prevailing party in this action pursuant to 42 U.S.C. § 1988.

Fee-shifting is the rule in civil rights litigation in which the plaintiff has been successful. *See Bercovitch v. Baldwin School, Inc.,* 191 F.3d 8, 10 (1st Cir. 1999) (citation omitted). In this circuit, courts follow the lodestar method for calculating reasonable attorney fees. *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008). This approach requires a simple multiplication of hours spent by a reasonable hourly rate to calculate a base figure. *Id*. "[A] reasonable fee is for the most part, an assessment of the difficulty of the work involved and the time reasonably expended." *Matalan v. Hynnes*, 806 F. 3d 627, 639 (1st Cir. 2015).

---

[8] The jury also found for Plaintiff on his claims for unlawful entry to his home by Officers Daniel McKay and Felix Romero but decided this violation was not the proximate cause of any damages.

*Hourly Rate*

Here the hourly rates proposed for Plaintiff's counsel are eminently reasonable in comparison to other civil litigators in the federal courts of this District. Plaintiff's attached Exhibits B through D, affidavits from experienced litigators in the Western Division, establish this as fact. It is also undeniable that in the Boston Division, where the case was tried, reasonable fees are markedly higher. Each of Plaintiff's attorneys' qualifications is attached as Exhibits E through H. A detailed itemization of their time is attached as Exhibit I.

The difficulty of the work involved in getting this case to trial cannot be underestimated. Preparation of the *Monell* claim in this case was extraordinarily time intensive and required mastery of the City's disciplinary system, as well as the underlying facts of a dozen prior incidents involving the individual Defendants. *Contrast Cocroft v. Smith*, 148 F. Supp. 3d 57, 61 (D. Mass. 2015) (finding the use of "four senior level attorneys, one junior level attorney and a legal intern" excessive in a "straightforward and simplistic civil rights action" that featured "no *Monell* claim" and "minimal legal wrangling before or during the trial" (emphasis omitted)).

*Hours Expended*

The billing records submitted for each attorney reflect a judicious use of attorney time. Particularly relevant is the fact that the highest compensated attorney, David Hoose, whose rate is premised on his extensive trial experience, played a very minor role in the litigation until it was necessary to gear the case up for trial. Furthermore, the billing records make clear that Attorney Ryan delegated as much work as prudent to law student and first year associate Attorney Samantha LeBoeuf.

Much of the hours accumulated reflect the complexity of investigating and preparing the *Monell* claim for presentation before a jury, as well as substantial time spent responding to defense legal arguments that all courts ultimately deemed meritless.

*Degree of Success*

Courts have recognized that a factor to be considered in addition the hours expended and hourly rate is the extent of the prevailing party's success. *See Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) (describing this as "a crucial factor"); *see also De Jesus Nazario v. Rodriguez*, 554 F.3d 196, 209 (1st Cir. 2009). Specifically, the Court should consider the lodestar in light of "the amount of damages awarded as compared to the amount sought." *Farrar v. Hobby,* 506 U.S. 103, 114 (1992). As indicated in the pages above, the jury's verdict was substantially higher than the amount Plaintiff would have accepted by way of settlement, especially early on in the litigation. *Cf. Foley v. City of Lowell, Mass*., 948 F.2d 10, 20 (1st Cir. 1991) (recognizing that "in some cases, . . . a reasonable fee may exceed, several times over, the amount recovered by the plaintiff as damages"). Although Plaintiff did not obtain a judgment on every count of his complaint, these ostensibly unsuccessful claims involved "a tightly wrapped core of common facts shared with the claims upon which the plaintiff prevailed." *Lipsett v. Blanco*, 975 F.2d 934, 941 (1st Cir. 1992).

For example, during trial, Plaintiff argued that all three individual officers were liable for abuse of process and malicious prosecution due to their deliberate exaggeration of the threat level posed by Plaintiff when Hervieux struck him with his baton. While the jury ultimately concluded that Plaintiff did not satisfy his burden of proving these common law claims, its verdict on the excessive force and assault and battery claims against Hervieux demonstrates that the former claims "were sufficiently interconnected" with the latter "as to warrant an award of

fees for time spent on all aspects." *Wagenmann v. Adams*, 829 F.2d 196, 225 (1st Cir. 1987). In sum, "in order to try his successful claims, [Plaintiff] . . . had to try the entire case, including evidence relevant to the unsuccessful claims." *Krewson v. Finn*, 107 F.3d 84, 85 (1st Cir. 1997).

***Costs & Expenses***

Plaintiff is entitled to the costs of this litigation pursuant to 28 U.S.C. §§ 1920-1923 and by F.R.C.P. 54. Rule 54(d)(1) indicates that unless barred by other provisions of law the Court should award costs other than attorney fees to the prevailing party. 28 U.S.C. sections 1920 – 1923 delineate what expenses of the litigation may properly be taxed as costs. Included in the statutory provisions are: filing fees, fees for electronic or printed transcripts, copying costs, service of the complaint, summons and other documents.

Plaintiff is also entitled to the out-of-pocket expenses incurred in this litigation pursuant to 42 U.S.C. § 1988. In *Palmigiano v. Garrahy*, 707 F. 2d 636 (1st Cir. 1983) (Per Curiam), the First Circuit cited the "unanimous federal circuit authority that the attorneys' reasonable and necessary costs and expenses may be awarded to a prevailing party under 42 U.S.C. § 1988." *Id.* at 637. Included in the district court's award in *Palmigiano* were out-of-pocket expenses such as: "transportation, lodging, parking, food and telephone expenses." *Id.* The First Circuit affirmed the award and found it allowable under §1988. Two years later, in *Boston & Maine Corp. v. Moore,* 776 F. 2d 2 (1985), the First Circuit declared it "well-established in awarding fees in a civil rights case" that these types of out-of-pocket fees can be reimbursed, subject to a "test of reasonableness and necessity." *Id.* Plaintiff has appended an itemized list of costs and expenses as Exhibit J to this pleading.

The case for a full reimbursement of costs is also more compelling than usual. As the Court is aware, this case originated with Judge Mastroianni, who recused himself because he had

been the District Attorney of Hampden County when the incident took place and his office had prosecuted Plaintiff. The case then went to Judge Ponsor. When Judge Ponsor decided to take inactive status, the case was placed on "the wheel" and reassigned to this Court.[9]

As such, Plaintiff was forced to pay for lodging in Boston during the trial for both counsel and Mr. Hutchins. Lodging in Boston was both reasonable and necessary. As this Court is aware, Mr. Hutchins is a disabled man that often had to stand throughout the trial because prolonged periods of sitting cause him discomfort and/or pain. There is no way he could have travelled back and forth between Springfield and Boston each day. Accommodations for counsel were equally as necessary because this case was complex and time-consuming.[10] Simply put, Plaintiff could not afford to lose the time each day it would have required to commute from Northampton.

Further, the accommodation expenses are reasonable. Plaintiff's counsel made every effort to find an affordable place to stay during the course of the trial. As such, Plaintiff's three attorneys shared a three-bedroom Airbnb, which breaks down to approximately $50 per night/per attorney. Plaintiff also stayed in an Airbnb to keep costs low.

Trying the case in Boston necessitated counsel to incur additional expenses for transportation and parking. *See Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 15 n.5 (1st Cir. 2011) (finding "some travel was essential" since the "case was pending in the western division of the District of Massachusetts, sitting in Springfield, and the plaintiffs' lawyers were based in Boston (some 90 miles away)."). Again, Plaintiff's counsel made sincere efforts to keep these

---

[9] Should Defendants contest the reasonableness of costs associated with travel to, and lodging in, Boston, Plaintiff would request the opportunity to file a supplemental pleading on this issue under seal.

[10] It should be noted that opposing counsel also obtained lodging in Boston for the trial.

costs low. For example, Plaintiff's attorneys car-pooled to Boston so they would incur parking expenses for one vehicle only and used Uber or Lyft to travel to and from the courthouse.

***Prejudgment Interest***

Prejudgment interest is particularly appropriate in this case for the same reasons as an award for attorney fees and costs. Plaintiff requests that this Honorable Court add pre-judgment interest at the rate of 12% per year to the jury's verdict in accordance with M.G.L. c. 231 § 6B. As the Court is aware, the jury found Officer Hervieux liable under both state and federal law for his use of excessive force in taking the Plaintiff into custody. It is clear "that in cases where parallel claims are brought under both federal and state laws, and the damages recovered are duplicative, i.e., not segregated into separate federal and state components, a prevailing plaintiff is entitled to select the body of law under which the damages will be paid." *Doty v. Sewall*, 908 F.2d 1053, 1063 (1st Cir. 1990).

Mr. Hutchins is entitled to the "undiminished fruits of his state-law victory." *Id*.  Having waived the right to seek interest under federal law by not presenting the question to the jury, he is entitled to the full benefit of his state law victory, which includes prejudgment interest, to be added ministerially *after* the verdict. *See Foley*, 948 F.2d at 17; *Charles D. Bonanno Linen Serv., Inc. v. McCarthy,* 550 F. Supp. 231, 248 (D. Mass. 1982) (footnote omitted), *aff'd in relevant part,* 708 F.2d 1, 12 (1st Cir.), *cert. denied,* 464 U.S. 936 (1983); *see also Makino, U.S.A., Inc. v. Metlife Capital Credit Corp.,* 25 Mass. App. Ct. 302, 320 (1988). Accordingly, Plaintiff is entitled to prejudgment interest on the verdict against the Defendants from the date of suit (January 13, 2016) until the date that this Court enters judgment.[11]

---

[11] Plaintiff contends that he is entitled to the full benefit of his victory on both state and federal law claims. Since he cannot get interest under federal law, he is entitled to it under state law. Since he cannot get attorney fees on his common law state court victory, he is entitled to attorney

*Conclusion*

By any measure, "the determination that the municipality violated plaintiff['s] constitutional rights represented a significant legal conclusion serving an important public purpose." *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 125 (1st Cir. 2004). "Where," in a case such as this, "a plaintiff has obtained excellent results, his attorney[s] should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

**THE PLAINTIFF**

By:  /s/ Luke Ryan
LUKE RYAN, BBO# 664999
DAVID HOOSE, BBO# 239400
SASSON, TURNBULL, RYAN & HOOSE
100 Main Street, 3rd Floor
Northampton, MA 01060
(413) 586-4800
lryan@strhlaw.com

---

fees on his federal law claim pursuant to § 1988. While Plaintiff is confident that the law supports his posture that he is entitled to the benefits of both his federal and state court verdicts, should the Court feel that he must choose between the two, he would obviously choose the federal claims since his attorney fees and costs should exceed the amount of prejudgment interest.

## **CERTIFICATE OF SERVICE**

I, LUKE RYAN, hereby state that the foregoing was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 8, 2019.

 /s/ Luke Ryan, Esq.
BBO#664999
Sasson, Turnbull, Ryan & Hoose
100 Main Street, 3rd floor
Northampton, MA  01060
(413) 586-4800
lryan@strhlaw.com