## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * *
                                *
LEE HUTCHINS, SR.               *
                                *
        Plaintiff,              *      NO.  16-cv-30008-NMG
                                *
   v.                           *
                                *
DANIEL J. MCKAY, FELIX M.       *
ROMERO, THOMAS HERVIEUX, and    *
THE CITY OF SPRINGFIELD         *
                                *
        Defendants              *
                                *
* * * * * * * * * * * * * * * * *
```

### REPLY IN SUPPORT OF PLAINTIFF'S PETITION FOR ATTORNEY FEES AND PRE-JUDGMENT INTEREST (LEAVE TO FILE GRANTED 3/4/19)

*Introduction*

Long ago, in *City of Riverside v. Rivera*, 477 U.S. 561 (1986), the Supreme Court punctuated its rejection of a municipality's objection to a fee petition with this footnote observation: "petitioners could have avoided liability for the bulk of the attorney's fees for which they now find themselves liable by making a reasonable settlement offer in a timely manner . . . . The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Id.* at 580 n.11 (quotation marks and citations omitted).[1]

---

[1] In their objections to Plaintiff's fee petition, Defendants maintain Plaintiff's summary of settlement discussions somehow ran afoul of Fed. R. Evid. 408. (*See* Dkt. No. 165, Defs.' Amended Opp'n to Pl.'s Requested Att'y Fees, Costs & Pre-Judgment Interest at 12 n.1) There is no merit to this argument. In *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331 (1st Cir. 1997), a case cited by Defendants on page 9 of their brief, the First Circuit expressly noted

During the course of this three-year litigation, Defendants repeatedly ignored this admonition. Rather than accept Plaintiff's fee petition as a natural consequence of their actions, they now seek to commence "burdensome satellite litigation," *Burlington v. Dague*, 505 U.S. 557, 566 (1992), and "drown" this Court "in a rising tide of fee-generated minutiae,'" *Matalon v. Hynnes*, 806 F.3d 627, 639 (1st Cir. 2015) (citation omitted)). For the reasons set forth below, this Court should award fees and costs to Plaintiff in the amounts he has requested.

This Court should also award additional fees to Plaintiff for time spent litigating this fee petition, including $2,817.50 to respond to Defendants' opposition. *See* Exhibit A hereto. *See Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008) ("A prevailing party in a civil rights action normally is entitled to attorneys' fees incurred in the pursuit of fees under section 1988." (citations omitted)). "[T]o the extent that defendants raised unpersuasive arguments in opposing fees, which they clearly did, they have only themselves to blame for prompting a response from plaintiff[]." *Jacobs v. Mancuso*, 825 F.2d 559, 562 (1st Cir. 1987).

*Argument*

A.   *The Defendants Have Failed to Rebut the Reasonableness of Counsel's Hourly Rates*

---

that "inquiry into the course of settlement negotiations may yield information that is useful in determining fees." *Id.* at 341. Moreover, as the Third Circuit has recognized,

> Rule 408 does not bar a court's consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award in a particular case. . . . While evidence of settlement negotiations is only one indicator of the measure of success, it is a permissible indicator that is not precluded by Rule 408.

*Lohman v. Duryea Borough*, 574 F.3d 163, 167-68 (3d Cir. 2009); *see also Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000) ("Substantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply." (citation omitted)).

In their opposition, Defendants take the position that the hourly rates requested by Plaintiff's counsel are excessive because they exceed rates charged by defense counsel. (*See* Dkt. No. 165, Defs.' Amended Opp'n to Pl.'s Requested Att'y Fees, Costs & Pre-Judgment Interest at 11.) This apples-to-oranges comparison is plainly improper.

"[I]t is not unusual for a law firm representing a governmental entity on an ongoing basis to charge substantially lower hourly rates than would be charged for representation in a single case. Where the facts show this, the fee charged by a government attorney is simply irrelevant to the establishment of a reasonable hourly rate for a plaintiff's civil rights lawyer." *Norman v. Housing Authority of City of Montgomery*, 836 F. 2d 1292, 1300 (11th Cir. 1988), *cited with approval by De Jesus Nazario v. Morris Rodriguez*, 554 F.3d 196, 207 n.3 (1st Cir. 2009).

Given Defendants' failure to adduce any relevant evidence "of a countervailing rate structure," *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 16 (1st Cir. 2011), this Court can and should embrace Plaintiff's suggested rates.[2, 3]

B.      *The Defendants' Claims of Overstaffing are Baseless*[4]

---

[2] With respect to Attorney LeBoeuf's proposed rate for work she performed as a law student, Defendants contend she should be compensated at a rate of $25/hour instead of the $100/hour requested. Defendants offer no support for their proposed rate which is less than half the rate Judge Ponsor found reasonable for a law student in the Western Division over two decades ago. *See Stanton v. S. Berkshire Reg. Sch. Dist*, 28 F. Supp. 2d 37, 42, 44 (D. Mass. 1998) (stating that if plaintiffs were entitled to attorney's fees, rate for law student would be $60/hour).

[3] *See* Exhibits B and C, Affidavits of John Pucci, Esq. and Marissa Elkins, Esq., concerning Plaintiff's suggested rate of $175/hour for Attorney LeBoeuf's work as an attorney.

[4] It should be noted that Plaintiff has not sought compensation for work performed by any of the multiple paralegals and secretaries who completed tasks in this case. *Cf. Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 14 (1st Cir. 2011) ("Here, the plaintiffs accounted for a modicum of overstaffing by . . . completely disregarding the hours worked by some minor players before formulating their fee request."). Plaintiff has also excluded electronic research fees which are typically recoverable. *See InvesSys, Inc. v. McGraw-Hill Cos., Ltd.*, 369 F.3d 16, 22-23 (1st Cir. 2004).

In their brief, Defendants state that "Attorney LeBoeuf, while no doubt quite helpful to the other attorneys, examined no witnesses during the trial, nor did she argue any motions, or conduct the opening or the closing." (Defs.' Amended Opp'n to Pl.'s Requested Att'y Fees, Costs & Pre-Judgment Interest at 7.) Accordingly, they contend Plaintiff is entitled to no fees Attorney LeBoeuf accrued for the "quite helpful" time she spent at trial. (*Id.* at 8.) Not surprisingly, Defendants cite no authority for this remarkable contention.

As Plaintiff previously noted, courts in this circuit have been cautioned against rewarding defendants for a lodging a "vehement 'Stalingrad defense.'" *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998) (citation omitted). Here, "[a]fter setting such a militant tone and forcing the plaintiff[] to respond in kind, it seems disingenuous for [defendants] to castigate the plaintiff[] for putting too many troops into the field." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 298 (1st Cir. 2001).

For many years, "court appearances" have been regarded as "core work . . . worthy of full reimbursement." *Castaneda-Castillo v. Holder*, 723 F.3d 48, 80-81 (1st Cir. 2013) (citing *Brewster v. Dukakis*, 3 F.3d 488, 492 n.4 (1st Cir. 1993)). In fact, in *Castaneda*, the First Circuit rejected a challenge to a portion of a fee petition that sought compensation for two attorneys for time spent attended court proceedings, even though only one of them addressed the court. *Id.* at 79-81;[5] *see also Northeast Ohio Coalition for Homeless v. Husted*, 831 F.3d 686, 703-04 (6th

---

[5] Earlier in that decision, the First Circuit cited *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989), for the proposition that a "reasonable attorney's fee" under 42 U.S.C. § 1988 "must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client." *Castaneda-Castillo*, 723 F.3d at 77. Here, it is undisputed that Attorney LeBoeuf's work at trial made a substantial contribution to the advocacy offered on behalf of Mr. Hutchins.

Cir. 2016) (rejecting fee petition challenge based on the "discrepancy between the number of attorneys appearing at oral argument and the number of attorneys who actually argued").

In the final analysis, "a litigant's staffing needs and preparation time will often vary in direct proportion to the ferocity of her adversaries' handling of the case." *Lipsett v. Blanco*, 975 F.2d 934, 939 (1st Cir. 1992). Here, Attorney LeBoeuf provided substantial assistance at a hotly contested trial performing tasks customarily undertaken by a junior associate. The quest to deny her compensation for this important labor is misplaced and unworthy of serious consideration.

C.   *Plaintiff's Counsel Devoted Reasonable Amounts of Time to the Tasks in Question*

It is well-settled that "some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.' Most obvious examples are the drafting of the initial pleadings and the work associated with the development of the theory of the case." *Webb v. Dyer County Bd. of Ed.*, 471 U.S. 234, 243 (1985). In this case, Defendants contend the 17.4 hours devoted to this task were excessive and therefore must be reduced to four hours. Defendants cite no authority in support of this *ipse dixit* declaration.[6]

In light of the "social cost" imposed whenever "nonmeritorious claims [are] brought," *Burlington v. Dague*, 505 U.S. 557 (1992), attorneys for would-be plaintiffs have an obligation to carefully craft complaints after surveying the applicable caselaw. Putting a four-hour time limit on this process is a recipe for clogging court dockets with cases destined for summary dismissal.

While courts do occasionally cap time spent drafting complaints, there is nothing inherently excessive about dedicating 17.4 hours on this endeavor – particularly when most of

---

[6] Nor do they cite any authority for their claim that the time spent responding to interrogatories should be reduced from 29.4 hours to 8.

5

the time is spent by a member of the legal team billing at a rate of $100/hour. *Cf. Conn. St. Dept. of Social Services v. Thompson*, 289 F. Supp. 2d 198, 208-09 (D. Conn. 2003) ("[M]ore than 80 hours were devoted to this task. From the total time spent in preparation of the complaint, I will cut 30 hours in order to bring the time down to a reasonable figure.").

D. *There is No Basis for the Defendants' Requested One-Third Reduction for Time Spent on Unsuccessful Claims.*

As Judge Wolf once wrote, "a party that has prevailed on some but not all of its related claims and has received substantially complete relief should be treated the same as a party that prevailed on all of its claims and received full relief." *Rogers v. Motta*, 655 F. Supp. 39, 44-45 (D. Mass. 1986). In the memorandum of law he filed with the fee petition, Plaintiff explained how his ostensibly unsuccessful claims involved "a tightly wrapped core of common facts shared with the claims upon which the plaintiff prevailed." *Lipsett*, 975 F.2d at 941. By way of example, he specifically noted the interconnected nature of his claims for abuse of process and malicious prosecution against all the individual defendants and his claim against Hervieux for excessive force.

In their pleading, Defendants simply run down the verdicts on the various counts and make no effort to explain how, for example, Plaintiff could have tried his excessive force claim against Thomas Hervieux while ignoring the pepper spray Daniel McKay administered moments before that force was deployed. *See Krewson v. Finn*, 107 F.3d 84, 85 (1st Cir. 1997) (recognizing that "in order to try his successful claims, [Plaintiff] . . . had to try the entire case, including evidence relevant to the unsuccessful claims"). Nor do Defendants offer any thoughts

6

as to how Plaintiff could have disregarded the illegal entry into his residence that gave rise to this incident.[7]

In sum, this is not one of those occasions "unlikely to arise with great frequency," where it makes sense to "divide the hours expended on a claim-by-claim basis." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Given the "significance of the overall relief obtained," *id.*, this case "warrant[s] an award for time spent on all aspects," *Wagerman v. Adams*, 829 F.2d 196, 225 (1st Cir. 1987).

E.    *The Costs Plaintiff Has Requested are Reasonable and Should be Awarded*

In seeking reimbursement for costs associated with relocating his three attorneys for the trial, Plaintiff pointed out that "opposing counsel also obtained lodging in Boston." (Dkt. No. 158, Mem. of Law in Supp. of Pl.'s Petition for Att'y Fees & Pre-Judgment Interest at – n.8.) In their objections, Defendants attach special significance to the fact that one of the four defense attorneys commuted to and from Springfield each day. The upshot is three attorneys on each side

---

[7] Defendants' characterization of the illegal entry claim as unsuccessful "blurs the distinction between claims and damages." *Coutin*, 124 F.3d at 340. The jury's conclusion that Plaintiff suffered no damages as a result of the entry into his residence does not erase the fact that it found that entry unconstitutional. *See O'Connor v. Huard*, 117 F.3d 12, 18 (1st Cir. 1997) (recognizing that the vindication of constitutional rights still acts as a deterrent to police misconduct even in the absence of a monetary reward). While Plaintiff might not have achieved this outcome at summary judgment, Judge Ponsor's ruling on Plaintiff's motion undoubtedly paved this way for this result. *See Hutchins v. McKay*, 285 F. Supp. 3d 420, 427 (D. Mass. 2018) (denying plaintiff's motion "on the narrow ground that a reasonable factfinder could conclude, viewing the facts in the light most favorable to Defendants, that McKay and Romero reasonably believed that the interior staircase was a common area outside Plaintiff's home and that neither of them entered the kitchen"). As for Defendants' contention that undersigned counsel improperly included time devoted to an altogether different case, the 2.2 hours spent researching Wilhite's summary judgment opposition consisted of a review of Attorney Howard Friedman's Rule 56 submissions in *Wilhite v. Pioggia et al*, 14-cv-30023-MAP.

incurred costs related to lodging that would have otherwise been incurred for travel.[8] There is no reason to deny compensation for this unavoidable expense. *See Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 15 n.5 (1st Cir. 2011) (finding "some travel was essential" since the "case was pending in the western division of the District of Massachusetts, sitting in Springfield, and the plaintiffs' lawyers were based in Boston (some 90 miles away).").

F.   *Defendants Cite No Authority in Support of their Pre-judgment Interest Position*

In *Foley v. City of Lowell, Mass.*, 948 F.2d 10 (1st Cir. 1991), "the jury awarded the plaintiff $25,000 in compensatory damages for denial of his civil rights under federal and state law." *Id.* at 16. The plaintiff subsequently sought pre- prejudgment interest on his "state-law verdicts" pursuant to M.G.L. c. 231, § 6B, *and* "an award of counsel fees and costs under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988." *Id.* at 16 n.7, 18.[9] The First Circuit found that "where parallel claims are brought under both federal and state laws, and the damages recovered are duplicative, i.e., not segregated into separate federal and state components, a prevailing plaintiff is entitled to select the body of law under which the damages will be paid." *Id.* at 17 (citing *Doty v. Sewall*, 908 F.2d 1053, 1063 (1st Cir. 1990); *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1345 (1st Cir. 1988)).[10] In *Foley*, this meant that:

---

[8] In fact, had Plaintiff's counsel traveled to and from Boston each day, those costs easily would have exceeded the lodging expenses.

[9] The plaintiff in *Foley* also cited a "state-law counterpart, Mass.Gen.L. ch. 12, § 11I," in his fee petition. *Id.* at 18. In adjudicating the reasonableness of the attorney's fee awarded, the First Circuit cited no state law decisions but relied exclusively on federal authority interpreting 42 U.S.C. § 1988. *See id.* at 18-20.

[10] This portion of the *Freeman* opinion contained a citation to the First Circuit's then-recent *per curiam* decision in *Schroeder v. Lotito*, 747 F.2d 801, 802 (1st Cir. 1984): "affirming district court's award of [a] lost profits under Rhode Island law though unavailable under federal law; and [b] attorneys' fees and costs under federal law though probably unavailable under state law." *See Freeman*, 865 F.2d at 1345.

8

- prejudgment interest would run on the compensatory damage award at the [state] rate of 12% per annum from the date of suit . . . until the date of final judgment.";

- plaintiff was entitled to a reasonable attorney's fee as a prevailing party under 42 U.S.C. § 1988; and

- "interest . . . on the attorneys' fee portion of the judgment, under the postjudgment interest statute, 28 U.S.C. § 1961, from the date the judgment is entered."

*Id.* at 16-22.

Aside from expressing their indignation at such an outcome, Defendants have furnished no reason for this Court not to afford this same relief.

*Conclusion*

"The Supreme Court has repeatedly cautioned that a fight over fees, within the broader framework of a litigated case, ought not take on a life of its own." *Brewster v. Dukakis*, 3 F.3d 488, 493 (1st Cir. 1993) (citing *Hensley*, 461 U.S. at 43lebeo6, for the proposition that "[a] request for attorney's fees should not result in a second major litigation"). Based on the foregoing, Plaintiff respectfully requests that this Court put an end to this fight by focusing "on the bottom line: . . . the degree of success obtained." *Husted*, 831 F.3d at 703 (citation omitted).

**THE PLAINTIFF**

By: /s/ Luke Ryan
LUKE RYAN, BBO# 664999
DAVID HOOSE, BBO# 239400
SASSON, TURNBULL, RYAN & HOOSE
100 Main Street, 3rd Floor
Northampton, MA 01060
(413) 586-4800
lryan@strhlaw.com

9

**CERTIFICATE OF SERVICE**

    I, LUKE RYAN, hereby state that the foregoing was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 4, 2019.

                                            /s/ Luke Ryan, Esq.
                                            Luke Ryan, Esq.